THE ALFREDO.[1]

THE LAURA BELLE.

SPRAKER v. THE ALFREDO.

DODERO v. THE LAURA BELLE.

(*District Court, E. D. New York.*  March 24, 1887.)

COLLISION—SAILING VESSELS—VESSEL HOVE TO—FOG-SIGNALS.
    A sailing vessel, when hove to in a fog, should ring a bell, and not blow a horn.

In Admiralty.
*Goodrich, Deady & Goodrich,* for Spraker and the Laura Belle.
*Butler, Stillman & Hubbard,* for Dodero and the Alfredo.

BENEDICT, J. The decision of these actions depends upon the question whether a collision between the bark Alfredo and the schooner Laura Belle, which occurred on the high seas, was caused by the fault of the bark, or the fault of the schooner, or by the fault of both, or of neither of the vessels. The collision happened in a dense fog. The bark was sailing close hauled on the starboard tack, making some three miles an hour. The schooner was hove to, with wheel lashed to starboard, the jib fast to the mast and aback, her mainsail trimmed to windward, and her foresail down. She was powerless to make any change of position. An effort was made in behalf of the schooner by calling the master a second time, at the last moment, to show the schooner to be moving, but the effort failed. Five or six of the schooner's own crew prove beyond the possibility of dispute that the schooner was not going ahead. Her libel describes her as "laid to, waiting for an

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

opportunity to fish." Her captain says: "We were not bound any-where; we were already on the ground." "The vessel was hove to, making no headway at all." Being thus situated, she claims she was sounding a horn, two toots at a time, and thus the question is presented whether the schooner was complying with the law and was under way within the meaning of the international regulations of 1885. These regulations, in article 12, require sailing vessels to be provided with an efficient fog-horn, to be sounded by a bellows or other mechanical means, and also with an efficient bell; and, when under way, to sound the fog-horn at intervals of not more than two minutes,—one blast if on the starboard tack, two blasts if on the port tack, and three blasts with the wind abeam. These requirements seem to me intended for a vessel moving close-hauled or free, not for a vessel without motion and powerless to change her position.

In Marsden on Collisions, 348, it is stated without qualification that "a ship is under way within the meaning of this article, when she is not fast to the shore or to moorings, or held by her anchor." But this statement does not seem to be supported by the authorities cited. In the case of the collision between the steam-ship Pennsylvania and the bark Mary Noop, which collision was before the judicial committee of the privy council (3 Mar. Law Cas. 477,) and also before the supreme court of the United States, (19 Wall. 125,) the obligation to sound a fog-horn was held to attach to the sailing vessel, by reason of the fact there proved that she had no sails aback, and was going through the water at about a mile an hour. She was, as the supreme court says, constantly changing her position. Judging by the test applied in that case, the Laura Belle, although not fast to the shore, or to moorings, or held by an anchor, was not under way within the meaning of article 12 of the international regulations of 1885. Here the schooner had sails aback and was not moving. She is described by her crew to be "dead in the water." "Sails not drawing at all." The rules, as it seems to me, are faulty indeed if they required this schooner, powerless as she was, and unable to do anything whatever in time to avoid the bark, to give to the approaching bark the same signal that she would give if moving and able to make some effort to get out of the bark's way. As I read the rules, in the light of the decision of the supreme court in the case of The Pennsylvania, they required this schooner to be ringing a bell, and forbid her to be sounding a horn.

The next question is whether this disobedience of the law by the schooner contributed to the collision that ensued. Here the law declared in the case of The Pennsylvania, already cited, is applicable, and it must be presumed that the failure to ring a bell, and sounding a horn instead, was "contributing cause of the disaster." This presumption is conclusive in a case like this where nothing appears to overthrow the presumption, and compels a decision that the damages arising from the collision were caused by the fault of the schooner.

Was the bark guilty of any fault which renders her also liable? I find none. It is insisted by the schooner that the bark had no proper

lookout, but the proof is that she had two lookouts, and that the schooner was seen as soon as possible. It is also said that the bark sounded no horn, but the schooner's own witnesses prove that they heard her horn. And, lastly, it is said that the bark was in fault for not starboarding her helm. The bark did not starboard, but why should she? She was close-hauled on the starboard tack. She was notified by the schooner's horn that a vessel was approaching close-hauled on the port tack. The bark's duty, therefore, was to keep her course, and to assume that the schooner would keep out of her way. Certainly she was not bound to starboard. I find therefore no fault committed by the bark. The result is that any damage sustained by the bark may be recovered in her action against the Laura Belle, while the libel of the Laura Belle against the bark must be dismissed. Costs in each case to the successful party.